UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIUS R. THERIOT,

        Petitioner,

v.                                    Civil Case No. 15-13679
                                    Honorable Linda V. Parker

DUNCAN MACLAREN,

        Respondent.

_____/

**OPINION AND ORDER DENYING THE AMENDED
PETITIONS FOR WRIT OF HABEAS CORPUS,
GRANTING IN PART A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Darius R. Theriot ("Theriot") has filed an amended habeas corpus

petition that challenges his convictions in a Michigan state court for second-degree

murder, several assaults, and one firearm offense. He asserts that he was denied

his right to present a defense and that his trial attorney's failure to object to the

scoring of the Michigan sentencing guidelines constituted ineffective assistance of

counsel. The State argues that Theriot procedurally defaulted two of his claims

and that the state appellate court's adjudication of his claims was objectively

reasonable.

The standard for evaluating state-court rulings is highly deferential, and the

state appellate court's adjudication of Theriot's claims was not so lacking in

justification that there was an error beyond any possibility for fairminded

disagreement.  Accordingly, the Court is denying Theriot's request for habeas relief.

## I.  Background

Theriot was charged with one count of first-degree murder in violation of Michigan Compiled Laws § 750.316, three counts of assault with intent to commit murder in violation of Michigan Compiled Laws § 750.83, one count of assaulting a pregnant woman causing miscarriage or death to a fetus in violation of Michigan Compiled Laws § 750.90b(a), and one count of possessing a firearm during the commission of a felony in violation of Michigan Compiled Laws § 750.227b.  The charges arose from a drive-by shooting during the late evening or early mornings hours between July 9-10, 2011.

The evidence at trial established that, on the night in question, Theriot and some of his male friends and relatives attended a party at JeNae Hudson's home on Wabash Street in Detroit, Michigan.  The young men were drinking and socializing with some girls when two cars arrived at the house.  Four young men jumped out of one car in an aggressive manner; one of them had a gun.  Theriot and his friends approached the intruders to determine what the problem was.  One of the intruders responded that Theriot's friend Devon Matthews had pointed a gun at the intruders on a previous occasion.  Theriot and his friends did not have any guns with them at

the time.  Theriot's cousins Dominque Stewart and Roumelle Merchant diffused the tension between the two groups of young men, and after Stewart shook hands with someone, the intruders left.  As they left, however, one of them said, "Y'all be careful.  You guys playing with fire."

Theriot then told his friends, "Don't worry about it, we'll get them later," and because he did not feel safe, he stated that he was going to get his gun.  Theriot and his friends left the party, got in Theriot's pick-up truck, and drove to his house, where he retrieved an AK47 assault rifle.  Theriot put the gun in the bed of his truck and then drove the group back to the party.

After spending another twenty or thirty minutes at the party, the group left in Theriot's truck.  Theriot drove the group down the street where the people that had interrupted the party lived.  At the time, Matthews was seated in the bed of the truck, and the rest of the group, including Roumelle Merchant, Manjaro Benning, Dominque Stewart, and someone named Nicholas, were seated in the truck.  Deveius Weathers and Theriot's brother James followed in a white car.

Theriot slowed down near a house where some people were gathered outside.  Shortly afterward, Matthews fired the AK47 multiple times at the people from the bed of Theriot's truck.  Two women and one man were injured in the

shooting, and a pregnant woman was killed. The four victims were not the people who had argued with Theriot and his friends earlier that night.

Theriot and his friends subsequently went to Theriot's home where one or more of the young men removed casings from the bed of the truck. From there, the group went to a drug house where Theriot and Matthews wiped the gun to remove fingerprints. The next day, Theriot and the young men who had been with him on the previous night got together and talked about the shooting. Theriot was nonchalant and said that there would be no snitching.

JeNae Hudson informed the police what she knew about the incident, and Theriot reported to the police a few days after the shooting. In subsequent jailhouse phone conversations with Stewart, Theriot encouraged Stewart to lie and to say that Theriot did not have anything to do with the crime. Theriot also informed Stewart that he (Theriot) was an enforcer.

Theriot and Matthews were tried jointly in Wayne County Circuit Court.[1] The prosecutor's theory was that Theriot aided and abetted Matthews in committing the crime and that he was guilty even though he intended to harm a different group of people than the ones who were shot.

_____

[1] A jury deliberated Theriot's case, but Matthews waived his right to a jury trial and asked the trial court to decide his case.

Theriot was the only defense witness. His defense was that he did not intend to kill anyone or have Matthews kill anyone and that there was reasonable doubt as to whether he was guilty. He testified that he did not instruct or ask Matthews to kill anyone, he did not know Matthews was going to kill anyone, and he did not tell anyone to lie under oath in court. Theriot also testified that he put the AK47 rifle in his truck for protection because someone in the group that confronted him and his friends earlier that night had a gun. He denied threatening anyone about going to court; he also denied telling his friends to lie and not snitch, explaining that, when he told his friends on the day after the shooting to say that he was not driving during the shooting, he meant that he did not know who was shooting.

On December 7, 2011, the jury found Theriot guilty of second-degree murder, as a lesser-included offense of first-degree murder, and guilty as charged on the three counts of assault with intent to commit murder, one count of assault of a pregnant woman causing death to a fetus, and one count of felony firearm. The trial court initially sentenced Theriot to four concurrent terms of forty-five to eighty years in prison for the murder and the assaults with intent to commit murder, a concurrent term of ten to fifteen years in prison for the assault on a pregnant woman, and a consecutive term of two years in prison for the firearm conviction.

In an appeal of right, Theriot argued that: (1) the trial court deprived him of his right to present a defense and his right of confrontation by excluding evidence that he reacted with surprise to the shooting; (2) the trial court deprived him of his right to present a defense by denying his request to admit excerpts of his jailhouse telephone calls; and, (3) the trial court erred by sentencing him as a second habitual offender because (a) the prosecutor never filed a notice of intent to pursue an enhanced sentence and (b) he did not have a prior felony conviction. Theriot also requested the assignment of a different trial court judge if the case was remanded for a new trial or re-sentencing. The Michigan Court of Appeals affirmed Theriot's convictions, but vacated his sentence and remanded his case to the trial court for re-sentencing because Theriot should not have been sentenced as a habitual offender. *See People v. Theriot*, No. 308640, 2013 WL 6703494, at *1 and *6-*7 (Mich. Ct. App. Dec. 19, 2013) (unpublished). On July 29, 2014, the state supreme court denied leave to appeal. *See People v. Theriot*, 849 N.W.2d 373 (Mich. 2014).

On October 31, 2014, the state trial court re-sentenced Theriot to four concurrent terms of thirty-five to forty-five years in prison for the second-degree murder and assault-with-intent-to-murder convictions and a concurrent sentence of ten to fifteen years in prison for the assault-of-a-pregnant-woman conviction. The

court also sentenced Theriot to two years in prison for the felony-firearm

conviction, but it noted that Theriot had already served that sentence.

Theriot appealed his new sentence, claiming that he was entitled to re-

sentencing because his trial attorney failed to object to the scoring of offense

variable five of the sentencing guidelines. The Michigan Court of Appeals

affirmed the sentence, concluding that offense variable five was correctly scored

and counsel was not ineffective for failing to object to the scoring of the variable.

*See People v. Theriot*, No. 325973 (Mich. Ct. App. June 21, 2016).

Meanwhile, on October 16, 2015, Theriot commenced this action by filing a

pro se habeas corpus petition under 28 U.S.C. § 2254 and a motion for

appointment of counsel. In his habeas petition, Theriot argued as grounds for relief

that the trial court violated his constitutional rights by (1) excluding evidence of his

surprised reaction immediately after the shooting and (2) refusing to allow his

attorney to admit in evidence excerpts of recorded phone conversations. After

Respondent filed an answer to the petition, the Court granted Theriot's motion for

appointment of counsel and, on October 31, 2016, newly-appointed counsel for

Theriot moved to hold the habeas petition in abeyance because Theriot's appeal

from his new sentence was pending in the Michigan Supreme Court.

On December 15, 2016, the Court granted the motion for a stay and closed this case for administrative purposes. On January 5, 2017, the Michigan Supreme Court denied leave to appeal Theriot's sentencing claims because it was not persuaded to review the questions presented to it. *See People v. Theriot*, 888 N.W.2d 103 (Mich. 2017).

Theriot then filed an amended habeas petition and a motion to re-open this case.[2] The Court granted the motion to re-open this case, and Respondent subsequently filed a supplemental answer which addresses Theriot's sentencing claim.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.' " *Wilson v. Sellers*, 138 S. Ct. 1188,

---

[2] Theriot actually filed two amended petitions. The first one (ECF No. 21) was filed by his appointed attorney, and the second one (ECF No. 23) was filed by Theriot himself.

1192 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. A state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is

"limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  Analysis

### A.  The Exclusion of Evidence About Theriot's Reaction to the Shooting

Theriot alleges first that the trial court deprived him of his right of confrontation and his right to present a defense by excluding his verbal and nonverbal expressions of surprise immediately after the shooting.  The trial court ruled that Theriot's surprised demeanor and his remark, "What the hell was that?" were assertions and inadmissible as hearsay.

Theriot, on the other hand, maintains that his surprised demeanor was non-assertive conduct, which is admissible in evidence, and that his question, "What the hell was that?" was not offered for the truth or was admissible under the "excited utterance" exception to the hearsay rule.  He contends that the trial court should have admitted evidence of his reaction to the shooting during his cross-examination of prosecution witnesses because the evidence would have bolstered his defense that he lacked the necessary intent to be convicted of aiding and abetting Devon Matthews.

The Michigan Court of Appeals agreed with Theriot on the state evidentiary issue and concluded that the trial court abused its discretion by prohibiting Theriot

from asking witnesses about his demeanor and question immediately after the shooting. *Theriot*, 2013 WL 6703494, at *2. The Court of Appeals, nevertheless, concluded that the error was harmless and that Theriot was not entitled to relief. *Id*. at *2, 4. As for Theriot's claim that his right of confrontation was violated, the Court of Appeals stated that Theriot abandoned the claim by not making an argument on how he was denied the right.

The Court of Appeals reviewed Theriot's claim regarding the right to present a defense for "plain error" because Theriot did not preserve the issue by objecting on constitutional grounds at trial. *Id.* at *2. The Court of Appeals cited Supreme Court precedent on the constitutional issue, but then concluded that the evidentiary error did not rise to the level of a constitutional deprivation. *Id*. at 4. The court found that Theriot was not denied a meaningful opportunity to present a defense "because there was testimony showing that he was scared after the shooting based on how he sped off and jerked the truck[]" and because he was able to ask the witnesses questions about the incident to show that he did not know there would be a shooting. *Id.*

### 1. Procedural Default

Respondent argues that Theriot procedurally defaulted his claim regarding the right to present a defense because the Michigan Court of Appeals reviewed that

claim for "plain error."[3] Theriot maintains that there was no procedural default because his trial attorney did object at trial and because the Court of Appeals reviewed his claim on the merits.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997 ). Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

A procedural default is not a jurisdictional bar to reviewing the merits of a claim, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Because Theriot's claim does not warrant habeas relief, the Court bypasses the procedural-default analysis and proceeds directly to the merits of his claim.

_____

[3] Respondent has not argued that Theriot's claim under the Confrontation Clause is procedurally defaulted.

## 2.  The Merits

Theriot asserts that the trial court erred when it ruled that he could not elicit testimony regarding his verbal and nonverbal reactions to the shooting.  He maintains that the proffered testimony was admissible under the Michigan Rules of Evidence and state-court decisions.

The contention that the trial court violated Michigan's evidentiary rules is not a cognizable claim on federal habeas review, *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009), because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The only question is whether excluding testimony about Theriot's reaction to the shooting violated his constitutional rights to present a defense and to confront the witnesses against him.

### a.  Right to Confrontation

Theriot contends that not being able to ask witnesses about his reaction to the shooting violated his right to confront the witnesses.

### i. Clearly Established Federal Law

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal prosecution "the right . . . to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  This right is "applicable to the States through the Fourteenth Amendment," *Idaho v. Wright*, 497 U.S. 805, 813 (1990), and it "includes the right to cross-examine witnesses." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

A defendant's right to confront the witnesses against him, however, is not absolute.  *United States v. Davis*, 430 F.3d 345, 360 (6th Cir. 2005).  "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).  When it is merely the *extent* of cross-examination that is limited, a trial court retains considerable discretion to bar exploration of a relevant subject on cross-examination.  *Dorsey v. Parke*, 872 F.2d 163, 166-67 (6th Cir. 1989).  "Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006), as

14

amended on denial of reh'g and reh'g en banc (Feb. 15, 2007) (quoting *Dorsey*,

872 F.2d at 167).

## ii.     Application

Theriot's trial attorney was not prevented from cross-examining prosecution

witnesses.  He was merely barred from asking them what Theriot's demeanor was,

and what he had said, immediately after the shooting.  Although Theriot contends

that testimony about his surprised reaction to the shooting would have supported

his defense that he did not know what Matthews intended to do, his trial attorney

was able to elicit testimony from more than one prosecution witness that Theriot

did not instruct any of his friends to shoot anyone.  Furthermore, because Theriot

was able to describe his reaction to the shooting when he testified, the jury had

enough information, despite the limits placed on the cross-examination of

witnesses, to assess the defense theory.

The Court also is mindful that errors under the Confrontation Clause are

subject to harmless error analysis.  *Delaware v. Van Arsdall*, 475 U.S. 673, 684

(1986); *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007).  For reasons

explained more fully below in the discussion on Theriot's right to present a

defense, the evidence against Theriot was strong.  The alleged confrontational

error, therefore, was harmless, and Theriot is not entitled to relief on his claim.

## b.  The Right to Present a Defense

Theriot claims that the exclusion of evidence regarding his reaction to the shooting violated his right to present a defense.

### i.  Clearly Established Federal Law

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted).  The exclusion of evidence is unconstitutional if it "significantly undermined fundamental elements of the defendant's defense." *United States v. Scheffer*, 523 U.S. 303, 315 (1998). "Restrictions on the defendant's right to present relevant evidence … may not be arbitrary or disproportionate to the purposes they are designed to serve." *Id*. at 330 (Stevens, J., dissenting) (citing *Rock v. Arkansas*, 523 U.S. 303, 330 1988)).

"The right to present a defense, however, is not absolute." *Ferensic v. Birkett*, 501 F.3d 469, 475 (6th Cir. 2007) (citing *Taylor v. Illinois*, 484 U.S. 400, 409 (1988), and *Michigan v. Lucas*, 500 U.S. 145, 152 (1991)).  Trial judges may "exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).  The Constitution also permits judges to exclude evidence that is repetitive.  *Id.*

Further, "erroneous evidentiary rulings rarely constitute a violation of a defendant's right to present a defense."  *United States v. Hardy*, 586 F.3d 1040, 1044 (6th Cir. 2009) (citing *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001)).  A habeas "court's duty 'is not to determine whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered [the] petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights.' "  *Lewis v. Wilkinson*, 307 F.3d 413, 420 (6th Cir. 2002) (quoting *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)).  Thus, "even if exclusion of evidence was erroneous under state law, the constitutional right to present a defense is not abridged unless the evidence was so material that it deprived the defendant of a fair trial."  *Allen v. Howes,* 599 F. Supp. 2d 857, 872 (E.D. Mich. 2009).

### ii. Application

Theriot points to two places in the record where he was deprived of his right to show that he was surprised by the shooting.  The first instance occurred when defense counsel attempted to ask prosecution witness Manjaro Benning whether Theriot was angry at anybody after the shooting.  The prosecutor objected to the

17

question, and the trial court sustained the objection on grounds that an answer to the question would be speculative and possibly hearsay if the answer included Theriot's words or nonverbal assertions. (*See* 11/29/11 Trial Tr. at 84-85, ECF No. 10-9 at Pg ID 664-65.)

The second instance occurred when defense counsel asked Roumelle Merchant how Theriot reacted after the shooting. The prosecution objected to the question, and the trial court sustained the objection on the basis that Theriot's reaction would be an assertion and, therefore, inadmissible hearsay. (*See* 11/30/11 Trial Tr. at 172-75, ECF No. 10-10 at Pg Id 959-60.)

Defense counsel subsequently raised the issue in the jury's absence and explained that, when he asked Merchant how Theriot reacted immediately after the shooting, he anticipated that Merchant would say that Theriot acted surprised and said, "What the hell was that?" The trial court upheld its previous ruling that Theriot's reactions to the shooting were assertions of innocence and inadmissible as hearsay. (*See* 12/1/11 Trial Tr. at 7-15, ECF No. 10-11 at Pg ID 1026-1034.)

The probative value of the testimony that Theriot wanted to elicit from those witnesses was not outweighed by factors such as unfair prejudice, confusion of the issues, or the potential to mislead the jury. Nevertheless, as the Michigan Court of Appeals pointed out,

Theriot was not precluded from presenting a complete defense because there was testimony showing that he was scared after the shooting based on how he sped off and jerked the truck. Defendant Theriot was also able to ask the witnesses whether anyone encouraged defendant Theriot to get the gun and drive by the house, and whether defendant Theriot ordered or encouraged defendant Matthews to shoot.

*Theriot*, 2013 WL 6703494, at *4.

The state appellate court's summary of the facts is supported by the record.

(*See* 11/29/11 Trial Tr. at 85-86, ECF No. 10-9 at Pg ID 665-66 (defense counsel's

cross-examination of Benning on whether Benning heard anyone encourage or

instruct someone to shoot a gun and whether Theriot had motioned to anyone); *id.*

at 82, Pg ID 662 (Benning's testimony that the shooting was somewhat of a

surprise to him); *id.* at 95-96, Pg ID 675-76 (Benning's testimony that he did not

hear Theriot speak with Matthews before the shooting); *id.* at 163-65, Pg ID 743-

45 (defense counsel's cross-examination of Dominque Stewart regarding whether

Theriot told Matthews to kill somebody and whether there was any conversation

about killing anybody); *id.* at 169, Pg ID 749 (Stewart's testimony that Theriot and

everyone else in their group acted scared after the shooting); 11/30/11 Trial Tr. at

169, 172, ECF No. 10-10 at Pg ID 956, 959 (defense counsel's cross-examination

of Roumelle Merchant regarding whether Theriot instructed Matthews to shoot

anyone); *id.* at 172, Pg ID 959 (Merchant's testimony that Theriot acted scared

after the shooting); 12/1/11 Trial Tr. at 162, ECF No. 10-11 at Pg ID 1181 (defense counsel's cross-examination of James Theriot and James' testimony that he did not hear anyone planning the shooting, and he did not hear anyone say, "Let's go kill somebody").

Theriot, moreover, testified that the gunshots surprised him and that after the shooting, he asked the men in his truck what happened. (*See* 12/5/11 Trial Tr. at 171, ECF No. 10-12 at Pg ID 1380.) According to Theriot, he asked Matthews what he was shooting. (*See id.* at 172, Pg ID 1381.) He also testified that immediately after the shooting, his reaction was, "What the heck just happened?" (12/6/11 Trial Tr. at 32, ECF No. 10-13 at Pg ID 1427.) He stated that he had been mad and confused by the shooting and that he had not known exactly what was happening. (*Id.* at 32-33, Pg ID 1427-28.)

The Court cannot conclude that fairminded jurists could disagree on the state court's determination that permitting Theriot to introduce evidence from prosecution witnesses that he was surprised by the shooting would have been cumulative to his live testimony.[4] The exclusion of additional testimony about

---

[4] In this Court's view, evidence that Petitioner was "scared" after the shooting is not the same as evidence showing that he was "surprised" shots were fired. The fact that Petitioner sped off after the shooting does not necessarily demonstrate that he was surprised that it happened. Additional evidence from other witnesses as to

20

Theriot's verbal and nonverbal reactions to the shooting did not violate his constitutional right to present a defense. *See United States v. Reichert*, 747 F.3d 445, 454 (6th Cir. 2014) (concluding that the defendant's constitutional right to present a defense was not violated by the exclusion of testimony because the defendant "had at least one other avenue of putting his own statements and beliefs into evidence: by taking the stand himself").

### c. Harmless Error

Even if the Court concluded that the exclusion of this evidence violated Theriot's right to present a defense, the violation is subject to harmless error analysis. *See Fleming v. Metrish*, 556 F.3d 520, 536 (6th Cir. 2009) (analyzing a claim regarding the exclusion of testimony and the right to present a defense for harmless error). On habeas review, an error is harmless unless it had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). As recently explained by the Sixth Circuit Court of Appeals:

---

the latter would therefore not have been cumulative. Further, a jury could find Petitioner's testimony on the issue self-serving and therefore testimony from other witnesses could have been helpful. For these reasons, the Court is granting a certificate of appealability on this claim. *See infra*.

In federal habeas proceedings, the *Brecht* standard governs and the federal court will not grant habeas relief unless the state error "resulted in 'actual prejudice.' " [*Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015)] (quoting *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710). This means that in order to grant habeas relief, the court must have at least "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.' " *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (quoting *Brecht*, 507 U.S. at 627, 113 S.Ct. 1710). "[G]rave doubt" about whether the error was harmless means that "the matter is so evenly balanced that [the court] feels [it]self in virtual equipoise as to the harmlessness of the error." *Id.* at 435, 115 S.Ct. 992.

*O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019).

Here, the evidence against Theriot was substantial, if not overwhelming. At his sentencing, the trial court summarized the evidence against Theriot as follows:

THE COURT: Well, here's . . . essentially what the evidence was.

[I]t was his [Theriot's] gun, his car, his idea, his idea to put the gun in the hands of the killer. And even though he was convicted as an aider and abettor, the record is just replete with evidence that he's the ringmaster or the puppeteer in this entire affair.
  . . . .

He was behind the wheel of the truck when it slowed down to facilitate the shooting. And, . . . all of his post shooting activities . . . really show[] how he was engaged in . . . extraordinary efforts to manipulate the outcome of the event and the case.

He is the overt leader in this situation. And his own words . . . [that he is] the shot caller and the one who causes everybody's demeanor to change when he comes on the scene is just . . . abundant evidence of his leadership in this entire tragic deathly bloody affair.

22

(1/4/12 Sentence Tr. at 7-8, ECF No. 10-15 at Pg ID 1632-33.) The Michigan

Court of Appeals summarized the facts similarly, noting that

> Theriot admitted to getting the gun, which he illegally owned, of his
> own free will. One witness testified that defendant Theriot made the
> decisions on where to go that night, and he intentionally drove his
> truck to the house and slowed down when he drove by it. Defendant
> Theriot was quoted as saying, "don't worry about it, we'll get them
> later, we'll take care of it in our own time," after four men associated
> with the victims had confronted defendant Theriot and his friends.
> After the shooting, defendant Theriot wiped the gun clean of prints,
> and he was the last person seen with the gun. He also urged witnesses
> not to snitch and to lie for him.

*Theriot*, 2013 WL 6703494, at *4.

The state courts' summaries of the facts are supported by the record. There

was additional evidence that Theriot knew his gun was loaded when he put it in his

truck (*see* 12/6/11 Trial Tr. at 60, ECF No. 10-13 at Pg ID 1455), and that he was

nonchalant immediately after the shooting and on the following day. (*See* 11/29/11

Trial Tr. at 70, 87, ECF No. 10-9 at Pg ID 650, 667.)

The evidence against Theriot was not so evenly balanced that the jurors

would have reached a different verdict if witnesses had testified about Theriot

being surprised after the shooting. This Court, therefore, does not have a grave

doubt as to whether the alleged errors had a substantial and injurious effect or

influence on the jury's verdict, that is, whether the error was harmless.

23

Accordingly, the state appellate court's conclusions that Theriot was not deprived of a meaningful opportunity to present a defense and that the evidentiary error was harmless were objectively reasonable.

Theriot was not deprived of a fair trial by the exclusion of evidence, and even if he was, the error was harmless.  He is not entitled to relief on his claim.

### B.  The Exclusion of Excerpts from Recordings of Phone Calls

Theriot alleges next that the trial court's denial of his request to admit small portions of recordings of his jailhouse telephone calls to friends and relatives violated his right to present a defense.  The prosecution initially introduced excerpts of the recordings, but when defense counsel tried to introduce additional excerpts of the recordings to show that the calls were taken out of context, the trial court denied his request.  Theriot argues that the trial court's ruling violated Michigan's "rule of completeness," *see* Mich. R. Evid. 106,[5] and also deprived him

---

[5] This rule reads as follows:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Mich. R. Evid. 106.

of his constitutional right to present a defense because the proffered evidence revealed the real meaning of his comments.

The Michigan Court of Appeals reviewed Theriot's evidentiary claim on the merits and concluded that the trial court did not err by refusing to play the additional excerpts. *Theriot*, 2013 WL 6703494 at *5. The Court of Appeals reviewed Theriot's constitutional claim for "plain error" because Theriot did not preserve the claim for appellate review. *Id.* at *4. The Court of Appeals then concluded that no constitutional error occurred. *Id.* at *5.

Respondent argues that Theriot's claim is procedurally defaulted because he did not object on constitutional grounds at trial. Theriot maintains that his claim is not procedurally defaulted because the state court denied his claim on the merits, rather than on the basis of a procedural default.

As noted above, a procedural default is not a jurisdictional bar to review of the merits, *Howard*, 405 F.3d at 476, and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson*, 351 F.3d at 215. In the interest of efficiency, the Court bypasses the procedural-default analysis and proceeds directly to the merits of Theriot's claim.

## 1. Clearly Established Federal Law

Petitioner had a constitutional right to present a complete defense, *Crane,* 476 U.S. at 690, but the right to present a defense is not absolute. *Ferensic*, 501 F.3d at 475. Although the Constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes,* 547 U.S. at 326. The Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted." *Crane*, 476 U.S. at 690 (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). As the Court explained in *Scheffer*:

> A defendant's right to present relevant evidence is … subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process. As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve."

523 U.S. at 308 (footnote, additional quotation marks and citations omitted). A reviewing court's duty is to determine whether the exclusion of evidence rendered the petitioner's trial so fundamentally unfair as to violate his constitutional rights, *Lewis*, 307 F.3d at 420, or deprive the defendant of a fair trial. *Allen,* 599 F. Supp. 2d at 872.

### 2. Application

During the first day of testimony, the prosecution introduced evidence of a phone conversation between Theriot and Dominque Stewart a few weeks after the shooting. During that conversation, Stewart stated that he wished he could go back to that night, and Theriot responded that "we" made some bad decisions that night. (*See* 11/29/11 Trial Tr. at 152-53, ECF No. 10-9 at Pg ID 732-33.)

Later in the trial, defense counsel argued in the jury's absence that the recording was unclear as to whether Theriot had said "he" or "we" made some bad decisions on the night of the crime. He requested permission to introduce another part of the recording to show that the conversation was really about "manning up" to the crime and telling the police what he did. (*See* 12/6/11 Trial Tr. at 12-13, ECF No. 10-13 at Pg ID 1407-08.) The trial court denied defense counsel's request because the proposed evidence was self-serving hearsay and because

Theriot had taken the stand and could testify as to what he meant. (*Id*. at 13-14, Pg ID 1408-09.)

The prosecution introduced another recording of a jailhouse phone call in which Stewart was discussing JeNae Hudson with Theriot. Hudson had spoken to the police and implicated Theriot in the crime shortly after the shooting, and during Stewart's phone conversation with Theriot, Theriot stated he did not know what Hudson had told the police. He also said that Hudson "was on some bullshit." (*See* 11/29/11 Trial Tr. at 26, ECF No. 10-9 at Pg ID 606; 12/6/11 Trial Tr. at 16, ECF No. 10-13 at Pg ID 1411.) Defense counsel stipulated to the admission of the recording (*see* 11/29/11 Trial Tr. at 112, ECF No. 10-9 at Pg ID 692), but he subsequently asked for permission to introduce twenty-four more seconds of that recording to show that Theriot was referring to some photos and warrants. (*See* 12/6/11 Trial Tr. at 15-16, ECF No. 10-13 at Pg ID 1410-11.) The trial court denied the request to play the additional twenty-four seconds of the recording because, in the court's opinion, the comment would confuse the jury, rather than illuminate Theriot's remarks, and because Theriot was planning to testify anyway. (*Id*. at 17, Pg ID 1412.)

The prosecution introduced a third jailhouse phone recording in which Theriot advised his brother James Theriot "to take the Fifth all the way." (*See*

12/1/11 Trial Tr. at 137, ECF No. 10-11 at Pg ID 1156; 12/6/11 Trial Tr. at 5, ECF No. 10-13 at Pg ID 1400.)  Defense counsel wanted to introduce an earlier conversation where Theriot's and James' mother said that she planned to encourage James to plead the Fifth Amendment because the police were trying to use James against Theriot.  Defense counsel wanted to introduce an additional recording to show that Theriot was trying to protect James from a threat or a scare tactic by the police, not because Theriot was trying to protect himself.  (12/6/11 Trial Tr. at 5-10, ECF No. 10-13 at Pg ID 1400-1405.)  The trial court denied defense counsel's request on grounds that (i) it did not give any context to the evidence already in evidence, (ii) Theriot could have cross-examined James about the matter, (iii) Theriot could explain his phone conversation in his future testimony, and (iv) the proffered evidence would create more confusion than illumination.  (*Id.*)

The trial court opined that defense counsel's arguments were undermined by the fact that Theriot was in the process of testifying and he could explain what he meant by his prior statements when he testified without introducing self-serving hearsay.  (*Id.* at 13-14, Pg ID 1408-09.)  The court ruled that defense counsel could only ask Theriot to explain his prior conversations, which were already in evidence.  (*Id.* at 14, Pg ID 1409.)

The Michigan Court of Appeals upheld the trial court's rulings. *Theriot*, 2013 WL 6703494, at *5-6. The court reasoned that playing additional excerpts of the recordings, apart from the original statements, would cause confusion and that Theriot was trying to rebut the implication of guilt by providing alternative explanations for his previous comments, rather than context for the statements. *Id.* The court rejected Theriot's constitutional argument on the basis that he had a meaningful opportunity to present a complete defense by testifying. *Id.*

In his habeas petition, Theriot claims that the excerpts he attempted to introduce should have been admitted in evidence under Michigan's rule of completeness and to provide context to the excerpts the prosecutor introduced. Theriot maintains that his proffered excerpts: undercut the prosecution's theory by providing alternative explanations for his statements; supported his theory that Matthews, and not Theriot, made bad decisions on the night of the crimes; show he was upset with Hudson because she was not truthful, not because she went to the police; and demonstrate that he was not encouraging his brother James to be evasive, but was trying instead to prevent James from exposing himself to criminal liability for perjury or something else. According to Theriot, without the additional excerpts he wanted to introduce, he was forced to ask the jury to take his word for what the phone conversations meant.

To the extent the trial court may have violated a Michigan rule of evidence, Theriot's claim is not cognizable on federal habeas review. *Hall*, 563 F.3d at 239. Even if cognizable, the state court determined that Theriot's proffered evidence was not admissible under the "rule of completeness," and the state court's interpretation of state law binds this Court on habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Furthermore, rules of completeness are "not designed to make something admissible that should be excluded." *United States v. Costner*, 684 F.3d 370, 373 (6th Cir. 1982) (interpreting Fed. R. Evid. 106, which is similar to Michigan Rule of Evidence 106). Finally, the late introduction of the additional evidence could have confused the jury.

Additionally, the Court cannot find that the state court unreasonably applied clearly established federal law when ruling that Petitioner had alternative avenues to put the jailhouse calls in context, including his own testimony. *United States v. Kerley*, 784 F.3d 327, 343 (6th Cir. 2015) (citing *Reichert*, 747 F.3d at 454). In fact, during his trial testimony, Theriot was able to provide an explanation for the comments that the prosecutor introduced through the jailhouse phone recordings. (*See* 12/6/11 Trial Tr. at 27, ECF No. 10-13 at Pg ID 1422 (explaining what he had meant when he talked with Stewart about Hudson going to the police and being "on some bullshit"); *id.* at 27-29, Pg ID 1422-24 (explaining that he told his

brother James to "take the Fifth all the way" because he did not want James to continue lying on the stand and perjure himself); *id*. at 29-30, Pg ID 1424-25 (explaining that when he told people that he did not have anything to do with the shooting, he meant that he wanted everyone to tell the truth to his lawyer and the police).) Therefore, he was not deprived of his right to present a complete defense by the trial court's evidentiary ruling. *Reichert*, 747 F.3d at 454.

The Court concludes that the state trial court's evidentiary ruling and exclusion of evidence did not deprive Theriot of his right to present a defense or his right to a fair trial. Further, the state appellate court's conclusion that Theriot's right to present a defense was not violated was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Theriot is not entitled to relief on his claim.

### C. The Sentence and Trial Counsel's Failure to Object

In his third and final claim, Theriot challenges the scoring of offense variable five of the Michigan sentencing guidelines. He contends that the fifteen points he received for offense variable five placed him in a higher guidelines range despite the lack of evidentiary support for the score and that his trial attorney was ineffective for failing to object to the score.

32

The Michigan Court of Appeals reviewed Theriot's claim following his re-sentencing. It reviewed the claim for plain error because Theriot did not preserve the claim for appellate review by raising it at sentencing, in a motion for re-sentencing, or in a motion to remand. Analyzing the claim, the Court of Appeals concluded that the trial court did not plainly err when it scored fifteen points for offense variable five and that trial counsel was not ineffective for failing to object to the score.

Respondent has not asserted that Theriot's sentencing claim is procedurally defaulted. (*See* Supplemental Answer in Opp'n to Pet. for Writ of Habeas Corpus, at 3, ECF No. 26 at Pg ID 2347.) Instead, Respondent argues that the claim lacks merit.

The Court understands Theriot to be raising two interrelated claims: (1) the sentencing guidelines were mis-scored; and, (2) trial counsel was ineffective for failing to object to the scoring of the guidelines. The contention that the sentencing guidelines were mis-scored is not a cognizable claim on habeas review because a challenge to the state court's application and interpretation of state sentencing guidelines is "a matter of state concern only," *Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003), and "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Theriot nevertheless contends that he was sentenced on inaccurate information and that his trial attorney violated his Sixth Amendment right to the effective assistance of counsel. A sentence based on extensively and materially false information, which the defendant had no opportunity to challenge, violates due process. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Further, an attorney violates the constitutional guarantee of effective assistance if the attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court, however, finds that the trial court did not rely on extensively and materially false information, and that trial counsel was not ineffective for failing to object to the scoring of offense variable five.

Offense variable five "is psychological injury to a member of a victim's family." Mich. Comp. Laws § 777.35(1). Fifteen points is an appropriate score if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." Mich. Comp. Laws § 777.35(1)(a). A score of zero is proper if "[n]o serious psychological injury requiring professional treatment occurred to a victim's family." Mich. Comp. Laws § 777.35(1)(b).

According to Theriot, the assessment of fifteen points for offense variable fifteen was without support in the state presentencing report and in the lower court

34

record. However, at Theriot's initial sentencing, the prosecutor stated that the murder victim's mother, Ronnette Dukes, had contacted a victim's advocate because she lived in Alabama and could not attend Theriot's sentencing. (*See* 1/4/12 Sentencing Tr. at 14, ECF No. 10-15 at Pg ID 1639.) Ms. Dukes reported to the victim's advocate that "the whole situation was very stressful for her" and that the loss of her unborn grandchild and not being able to get to know the grandchild was "extremely hard for her." (*Id*.) She also reported that she had been in counseling. *Id*.

Ms. Dukes' comments demonstrate that serious psychological injury requiring professional treatment occurred to a member of the victim's family. Therefore, the trial court did not sentence Theriot on the basis of extensively and materially false information, and trial counsel was not ineffective for failing to object to the scoring of offense variable five. An objection would have lacked merit, and "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

The state appellate court's decision affirming Theriot's sentence and rejecting his ineffectiveness claim was not contrary to Supreme Court precedent. Therefore, habeas relief is not warranted on Theriot's sentencing claim.

# IV. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

> A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). That standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Obtaining a certificate of appealability "does not require a showing that the appeal will succeed," and "a court of appeals should not decline the application . . . merely because it believes the applicant will not demonstrate an entitlement to relief." *Miller-El v. Cockrell*, 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

*Welch v. United States*, 136 S. Ct. 1257, 1263-64 (2016).

Reasonable jurists could debate the Court's resolution of Theriot's first claim regarding his right of confrontation and his right to present a defense. Reasonable jurists also could debate Theriot's claim regarding the exclusion of the recordings from his jailhouse phone calls. Reasonable jurists, however, could not debate the Court's assessment of Theriot's claim regarding his sentence. Therefore, the Court will grant in part and deny in part a certificate of appealability.

## V. Conclusion and Order

The state appellate court's adjudication of Theriot's claims was neither contrary to clearly established federal law, an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts.

Accordingly,

**IT IS ORDERED** that Theriot's amended petitions for the writ of habeas corpus (ECF Nos. 21 and 23) are denied.

**IT IS FURTHER ORDERED** that a certificate of appealability may issue on claims one and two only.

**IT IS FURTHER ORDERED** that Theriot may proceed in forma pauperis if he appeals this decision.

s/ Linda V. Parker_____
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 20, 2019